## DOSS GRIMES v. STATE.

Oct. 7, 1938.
(83 P. 2d 410.)

100

Glen Morris and Joe Adwon, both of Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Lewis R. Morris, Co. Atty., and Phil E. Daugherty, Asst. Co. Atty., both of Oklahoma City, for the State.

BAREFOOT, J. The defendant was convicted in the court of common pleas of Oklahoma county of the crime of unlawful possession of intoxicating liquor and sentenced to pay a fine of $50, and serve 30 days in jail. From this judgment and sentence, he has appealed.

The record in this case reveals that the defendant, Doss Grimes, was arrested by police officers of Oklahoma City on the 30th day of October, 1937, and charged in police court of said city, with the unlawful possession of 20 pints of assorted brands of tax paid liquor. Bond was given by defendant in the sum of $20, which, when said case was called for trial, was forfeited. No further action

was taken by the police court of Oklahoma City, except that the municipal judge of said city prepared a statement of said case, together with the names of the witnesses thereon endorsed, and transmitted them to the county attorney of Oklahoma county, who, on January 19, 1938, filed an information against the defendant in Oklahoma county. This case was originally filed in the county court of Oklahoma county, but was afterwards transferred to the court of common pleas of said county, where defendant was tried and convicted as above stated.

The first proposition presented in the brief of defendant is:

"That said information was filed by the county attorney without using his discretion in determining whether or not an offense had been committed as alleged in the information."

At the beginning of the trial the assistant county attorney in charge of the trial said:

"* * * and our office takes the position that in view of the direct wording of these statutes that whenever there has been a conviction in the municipal court, whether the evidence is sufficient to gain a conviction in the county court, that we are bound to file that action in the county court of this county."

The section referred to is section 2633, Okla. Stats. 1931, 37 Okla. St. Ann. § 93, which reads as follows:

"Where a conviction has been had in the police court of any city, town, or village of this state, for the violation of any provision of this act, it shall be the duty of the police judge of such city, or the justice of the peace of any town or village, to immediately file the name of such person so convicted, together with a list of the witnesses used or subpoenaed, with the county attorney of such county, and it shall be the duty of such county attorney to file an information in the county court of such county charging said party so convicted with the offense of which he was so convicted and any county attorney failing or

refusing to enforce the provisions of this act shall be removed from office."

We are called upon in this case to decide whether, under the terms of this statute, it becomes the mandatory duty of the county attorney to file an information against a defendant whose name is certified to him by the police judge, or the justice of the peace of any town or village, as having been convicted in that court; or whether or not the county attorney is vested with the power, under his office as county attorney, to investigate the facts in each case, and file an information when in his judgment and discretion it is proper so to do. This is the first instance in which this court has been called upon to interpret and construe this statute, and it is important to the county attorneys of this state, and especially in the counties where are located large cities, and cities with commission forms of government. We have examined the statutes of many states having stringent laws with reference to the sale or possession of intoxicating liquors, but have been unable to find one with this same provision, or very similar thereto. From the many cases which we have read two early decisions, one by Judge Williams of the Supreme Court of this state (Evans v. Willis, 22 Okla. 310, 97 P. 1047, 19 L.R.A. [N. S.] 1050, 18 Ann. Cas. 258), and one by Judge Doyle (In re McNaught, 1 Okla. Cr. 528, 99 P. 241), give a full and complete review of the authorities and history of prosecutions by indictment and information under the English law, and under the procedure of early times, and under the practice adopted in this state by the enactment of the Constitution. It is provided by the terms of our Constitution, section 17, article 2, Okla. St. Ann. Const. art. 2, § 17, that:

"No person shall be prosecuted criminally in courts of record for felony or misdemeanor otherwise than by presentment or indictment or by information. No person shall be prosecuted for a felony by information without having had a preliminary examination before an examin-

ing magistrate, or having waived such preliminary examination. Prosecutions may be instituted in courts not of record upon a duly verified complaint."

This provision of the Constitution was held self-executing in the case of In re McNaught, supra, and section 2828, Okla. Stats. 1931, 22 Okla. St. Ann. § 301, provides:

"Every felony must be prosecuted by indictment or information in the district or superior court. Misdemeanors must be prosecuted by information, except as otherwise provided by law: Provided, however, that the district court or the judge thereof, may, by order made, direct that any particular misdemeanor be presented to the grand jury, and when so ordered it may be prosecuted by indictment."

Under the common law informations were filed by the Attorney or Solicitor General as a rule for offenses more immediately against the king, or the public safety, but he also had the power and discretion to file informations in misdemeanor cases for an offense against an individual. But in cases of individual offenses they were generally filed by the Masters of the Crown Office. These statutes with reference to the filing of informations were amended from time to time, and as stated by Clark on Criminal Procedure, page 128:

"In our states the criminal information should be deemed to be such, and such only, as in England is presented by the attorney or solicitor general. This part of the common law has plainly become common law with us."

Following the rules of the common law, it thus became the rule in this country that prosecutions which in England were exercised by the Attorney or Solicitor General, became the duties of district and county attorneys under our practice. And, as stated in the case of Evans v. Willis, supra, 97 P. 1050:

"In this state it is made the duty of the county attorney, and not the Attorney General, to appear in the

district courts of their respective counties and defend on behalf of the state or his county, all actions or proceedings, civil or criminal, in which the state is interested or a party; and, whenever the venue is changed in any criminal case, or in any civil action or proceeding in which his county or the state is interested or a party, it is the duty of the county attorney of the county where such indictment is found, or the county interested in such civil action or proceeding, to appear and prosecute such indictment, and to prosecute or defend such civil action or proceeding in the county to which the same may be changed. Wilson's Rev. & Ann. St. Okla. 1903, § 1289, 19 Okla. St. Ann. § 183. And whenever there shall be no county attorney for the county, or when the county attorney shall be absent from the court, or unable to attend to his duties, the district court may, if it deems it necessary, appoint by an order entered on the minutes of the court some suitable person to perform for the time being the duties required by law to be performed by the county attorney, and the person so appointed shall thereupon be vested with all the powers of such county attorney for that purpose. Id. § 1293, 19 Okla. St. Ann. § 187. Section 17, art. 2, Const. (Bunn's Ed. § 26), supra, providing that 'no person shall be prosecuted criminally in courts of record for felony or misdemeanor, otherwise than by presentment or indictment or by information,' enabling a felony to be prosecuted by information, which under the common law could only be prosecuted by indictment, did not extend the rule so that a person could be put on trial in a court of record for a felony on information verified and exhibited only by a private prosecutor. To hold that in courts of record such prosecutions for misdemeanor could be maintained by such an information would establish two rules of practice in such courts for exhibiting informations, one for misdemeanors and another for felonies. When the same officer prosecutes for the state in all such cases, such practice is not presumed to have been intended by the framers of the Constitution."

In the above case, the question before the court was whether an individual other than the duly elected and qualified county attorney had the right, in this state, to prosecute a case where the information was not filed by the county attorney, and Judge Williams held that under

the Constitution and laws the court was without jurisdiction to hear or determine the case, where the information was presented by a private person. The facts in this case reveal that the county attorney refused to file an information or to O.K. a complaint against the defendant, giving as his reason that the relator was "a good friend of his, and a good man to keep him posted on whisky cases." The court further says:

"Hence, since the adoption of our state Constitution, no person can be prosecuted criminally in any court of record in this state for felony or misdemeanor other than by presentment of an indictment by a grand jury, or by information exhibited by the county attorney or other officer authorized by law. The information filed in this case by the private prosecutor, who was neither the county attorney nor any officer authorized by law, was void."

It will thus be noted that under our Constitution and statutes, and the early interpretations thereof, that it has been the intention to place the responsibility for determination when the citizens of this state should be informed against in the hands of a regular duly organized grand jury, or in the county attorney. State v. Snelson, 13 Okla. Cr. 88, 162 P. 444; Viers v. State, 10 Okla. Cr. 28, 134 P. 80; Ex parte Kelly, 45 Okla. 577, 146 P. 444; Watts v. Gerking, 111 Ore. 641, 222 P. 318, 228 P. 135, 34 A.L.R. 1489. In certain misdemeanor cases private individuals may post a bond and secure prosecution by the filing of a complaint. Section 3362, Okla. Stats. 1931, 39 Okla. St. Ann. § 528, Newton v. State, 14 Okla. Cr. 226, 170 P. 270. But this cannot be done where an information is to be filed. Ex parte Long, 26 Okla. Cr. 259, 223 P. 710; Whittemore v. State, 26 Okla. Cr. 338, 223 P. 890.

Under the statute for the enforcement of the prohibition laws of this state it is provided (section 2630, Okla. Stats. 1931, 37 Okla. St. Ann. § 15):

"Wherever the words 'this act' appear in any of the laws of this state enacted for the suppression of the liquor

traffic, commonly called prohibition laws, they shall be construed to mean and include all such prohibition laws of this state."

Section 2651, Okla. Stats. 1931, 37 Okla. St. Ann. § 92, provides that it is the duty of the county attorney to "diligently * * * attend all inquisitions held under the provisions of this chapter, and diligently to prosecute all violations" of which they may obtain knowledge and to bring suits, etc., and further provides for removal from office for failing to perform any duty required by the provisions of this act.

Section 2654, Okla. Stats. 1931, 37 Okla. St. Ann. § 94, provides that it shall be the duty of all officers, including the county attorney to "diligently enforce all the provisions of this chapter" and provides for the removal from office of any officer failing to perform his duty, and authorizes the procedure thereof.

Section 2655, Okla. Stats. 1931, 37 Okla. St. Ann. § 95, makes it the duty of all officers "having notice or knowledge of the violation of this chapter, to notify the county attorney of the fact of any such violation, and to furnish him with the names of persons within their knowledge by whom such violation can be proven."

Section 2633, Okla. Stats. 1931, 37 Okla. St. Ann. § 93, is the section heretofore quoted and is in question herein.

Section 2602, Okla. Stats. 1931, 37 Okla. St. Ann. § 8, declares it to be a crime to drink intoxicating liquor in any public place, and other places mentioned in the statute, and provides for a punishment by a fine of not less than $10, nor more than $100, or by imprisonment for not less than 5 days, nor more than 30 days, or by both such fine and imprisonment.

From a reading of all the above sections of the statute it will be noted, that it was the intention of the Legislature

through the different provisions thereof, to place in the hands of the county attorney the information with reference to the violation of the provisions thereof, and that the institution of proceedings thereunder should be left to his discretion. This is in harmony with the other criminal statutes of this state. Oklahoma Statutes 1931, §§ 2829, 7619, 19 Okla. St. Ann. § 185; 22 Okla. St. Ann. § 303; McGarrah v. State, 10 Okla. Cr. 21, 133 P. 260; State v. Snelson, 13 Okla. Cr. 88, 162 P. 444.

They provide that all classes of crime shall be laid before him, and if, after a fair and complete investigation it is his best judgment that a crime has been committed, he O. K.'s a complaint, or files an information, as in his judgment is deemed advisable. One of the most cardinal rules in construing constitutional or statutory provisions is, to discover the intention of those who made them. Another cardinal rule is that constitutional or statutory provisions should be so construed that effect may be given all of its provisions. We do not believe that it was the intention of the Legislature when they enacted section 2633, Okla. Stats. 1931, 37 Okla. St. Ann. § 93, to provide that a mandatory duty should be placed upon the county attorney to file an information in the county court, without an investigation of the facts surrounding the case. To place such a construction upon this statute would be in conflict with the full terms and provisions of said act, and in conflict with the whole criminal procedure of this state. It would be to say that the county attorney, who has full and complete power to say when an information shall be filed in a felony case, has not that power when a violation of the liquor laws are involved. We do not think the Legislature so intended.

It will be noted from the sections above quoted that it is a violation of the law to drink intoxicating liquors in a public place. Municipal courts and justice of the peace courts have jurisdiction "under the act," and can

assess both a fine and imprisonment. Yet if this statute is to be given the construction contended for it would be the duty of the justice of the peace and municipal courts to certify each conviction to the county attorney and it would be his mandatory duty to file an information in the county court, without investigation, even though he might believe that the punishment inflicted in the lower court was sufficient punishment for the crime involved. It has often been held in this state that a prosecution in a municipal court for an offense is no bar to the prosecution for the same offense in the county court. In re Simmons, 4 Okla. Cr. 662, 112 P. 951; Id., 5 Okla. Cr. 399, 115 P. 380.

The same reasoning applies here. Under the law of this state the Legislature has the authority to grant to cities the authority to have a charter form of government. Under that power they have the right and authority to pass ordinances prohibiting the sale or possession of intoxicating liquors within their municipal borders, and they may make the penalty the same as the state laws. Cumpton v. City of Muskogee, 23 Okla. Cr. 412, 225 P. 562. Yet if this was done and a defendant given a fine and jail sentence in the municipal court, it would be the duty of the municipal judge to certify this conviction to the county attorney, and it would be his mandatory duty to file an information in the county court, regardless of the amount of fine and imprisonment given the defendant, and although it was his judgment that the punishment would be sufficient under the law. One more illustration: A defendant is arrested by police officers, or a constable, and his arrest is made by reason of an illegal search of his home, without the officer having secured a search warrant. He is convicted, or forfeits his bond, as in the instant case. This case is certified to the county attorney. From his knowledge of the facts he knows that it will be impossible to secure a conviction. Yet under this statute, if a construction be placed on the same as contended, it would be his duty to file an information in the county

court and enmesh the county in costs, when he knew there was no chance to convict the defendant, or the facts which he learned on investigation might lead him to honestly believe that the defendant was not guilty of the crime charged. Yet he would have to file the information and defendant called upon to suffer the humiliation and expense of a useless prosecution.

We just do not believe it was the intention of the Legislature, when it passed this act, to make it the mandatory duty of the county attorney to file an information when these cases were certified to him, but that it was their intention that his attention should be called to these cases, and that he should make an investigation of them and exercise his discretion as to whether or not an information should be filed. We do not, and it is not our intention to hold, that it is necessary for him to make an independent investigation when these cases are certified to him. It may be, and probably often is, sufficient evidence for him to act upon the information received. If he does so act he is warranted in doing so, and the very fact that an information is filed is a presumption that the county attorney is satisfied that the defendant should be prosecuted. In the instant case the defendant was alleged to have the possession of 20 pints of bonded tax paid whisky. He was not placed on trial but forfeited a $20 bond. If permitted to escape many violators of the law would hasten to the municipal or justice court and enter a plea of guilty, and receive a fine, and plead this as a bar to further prosecution. This cannot be done under the decisions of this court.

The defendant was never tried in municipal court. The evidence which the county attorney had may have been sufficient to cause him to file an information in this case, and by his conviction no doubt was. The mere fact that the assistant county attorney stated that he construed it a mandatory duty to file cases when they had

been certified from the municipal court of Oklahoma City, and that he had done so in this case, is no reason for the discharge of this defendant in the present case.

It is next contended:

"2. That the county court exceeded its jurisdiction in making its order transferring said cause to the court of common pleas.

"3. That the court of common pleas was without jurisdiction to hear, try and determine said cause."

Defendant, in his brief, to sustain this contention, relies upon article 7, section 12, and article 7, section 1, of the Constitution, Okla. St. Ann. Const. art. 7, §§ 1, 12, and argues:

"* * * but the jurisdiction conferred upon the courts to do certain things and acts must be prescribed by the Legislature, and nowhere in the statute by act of the Legislature can it be said that the county court could transfer a cause in which it has original jurisdiction to some other court having a concurrent jurisdiction."

"* * * and that therefore the county court erred in transferring said cause to the court of common pleas over the objection and exception of defendant."

It is not necessary for the purpose of this opinion to give the complete law creating the court of common pleas in Oklahoma county. It is found in chapter 72, House Bill 11, Session Laws 1933, 20 Okla. St. Ann. §§ 691-708. This law creates the court and defines its jurisdiction, and under its terms it had jurisdiction of the case under consideration. It is provided by the terms of said act, as follows:

"[Sec. 8.] The district court and the county court in this county wherein the court of common pleas is hereby established, may in its discretion, at any time transfer any cause * * * now pending or. hereafter filed in said district or county courts to said court of common pleas in the event that the subject matter and amount involved in said cause be within the jurisdiction of said court of com-

mon pleas, as provided for in this act, and that said cause shall thereupon proceed as if originally brought in said court." 20 Okla. St. Ann. § 698.

The above section of the act gives express authority for the transfer of such cause to the court of common pleas. This case was not appealed from the municipal court to the county court, but was an original proceeding in the county court. The statute says: "* * * transfer any cause, etc.", and certainly under the terms of this statute the county court had the right to transfer this case to the court of common pleas, and this court was not without jurisdiction to hear and determine the same.

The final propositions urged by defendant for the reversal of this case are:

"4. That the evidence upon which said prosecution was based has heretofore been destroyed by the officers of Oklahoma City, Okla., in violation of law, and defendant was not confronted with the evidence constituting the crime for which he was convicted.

"5. That the court should have sustained the demurrer of the defendant, Doss Grimes, to the evidence."

The police officer who arrested this defendant testified that he found him in possession of 20 pints of tax paid liquor at Tenth and North Western in Oklahoma City. Defendant told him he had just made a delivery. He was booked in police court with possession of 20 pints; that he posted a bond of $20, and that the bond was forfeited. When asked where the liquor was that had been seized, the officer said: "We tagged one pint to be held for evidence and the rest of it was destroyed at the police station"; that the liquor was turned over to the lieutenant in charge of the vice bureau, and was destroyed on order of the police judge. No order by the police judge was introduced in evidence and no city ordinance was introduced in this case. There is no question of the validity of a search warrant involved in the instant case.

From the testimony of the two police officers, the defendant was found in possession of 20 pints of tax paid whisky. He had just made a delivery of same and was arrested. The crime was committed in the presence of the officers and his arrest was lawful and his conviction proper under the testimony.

It is contended by defendant that this case should be reversed for the reason that the liquor was destroyed by the police judge and was not produced at the trial for inspection by the defendant, and that there was no proof that it contained a per cent. of alcohol of more that 3.2 per cent. The record does not show any request on the part of the defendant or his counsel for permission to introduce in evidence any of the whisky taken from the possession of the defendant. It does not show that he even requested to be introduced the pint of whisky which the officer testified had been labeled and marked for evidence. Nor does it show any exception taken to the failure to introduce any of the liquor seized. The proof revealed that defendant was in possession of 20 pints of whisky. This court has often held that it will take judicial notice that alcohol and whisky are intoxicating and that it is unnecessary to prove the alcoholic content of the same. Moss v. State, 4 Okla. Cr. 247, 111 P. 950; Skelton v. State, 31 Okla. Cr. 343, 239 P. 189; Richardson v. State, 21 Okla. Cr. 393, 208 P. 1052.

It is provided by the statutes of this state as follows: Oklahoma Statutes 1931, § 2640, 37 Okla. St. Ann. § 89:

"When a violation of any provision of this chapter, shall occur in the presence of any sheriff, constable, marshal, or other officer having power to serve criminal process, it shall be the duty of such officer, without warrant, to arrest the offender and seize the liquor, bars, furniture, fixtures, vessels, and appurtenances thereunto belonging so unlawfully used, and to take the same immediately before the court or judge having jurisdiction in the premises, and there make complaint, under oath, charging the of-

fense so committed, and he shall also make return, setting forth a particular description of the liquor and property seized, and of the place where the same was so seized, whereupon the court or judge shall issue a warrant commanding and directing the officer to hold the property so seized in his possession until discharged by due process of law, and such property shall be held and a hearing and adjudication on said return had in like manner as if the seizure had been made under a warrant therefor."

Section 2641, Okla. Stats. 1931, 37 Okla. St. Ann. § 90:

"All liquors, property and things seized under the provisions of this act shall, upon being adjudicated forfeited to the state, be forthwith destroyed by the officer in whose custody the same is at the time of adjudication. Provided, however, that the judge or magistrate may, in his discretion, appoint a special officer for the purpose of executing the judgment of forfeiture by destroying said liquors, property and things; provided, further, that if in the opinion of the judge or magistrate, such forfeited property and things, other than liquor, is of value and adapted to any lawful use, such judge or magistrate shall as a part of the order and judgment in the case, direct that such property or things of value be turned over to the board of county commissioners to be by said board of commissioners sold and disposed of for the benefit of the court fund of the county; provided, further, that twenty-five (25 per cent.) per cent. of all the proceeds, including all moneys and cash seized, with the other things of value, shall be paid to the party who prosecuted the search and seizure proceedings."

Section 2642, Okla. Stats. 1931, 22 Okla. St. Ann. § 1261:

"In all cases where wines, whisky, beer or other intoxicating liquors mentioned in the Constitution or laws of this state or any personal property used for the purpose of violating any of the prohibitory liquor laws or gambling laws of this state, shall be seized by any officer or person with or without a search warrant, such officer or person is hereby required within five days to make a written report under oath and file the same with the county clerk of

the proper or respective county where the same shall be so seized, which report shall in detail state the name of the officer or person making the seizure, the place where seized and an inventory of the property, articles or intoxicating liquors so taken into possession, and within said five days said person is hereby required to deliver the same to the sheriff of the county and take the sheriff's receipt therefor, in duplicate and such sheriff shall retain the same and all thereof, until the same shall be destroyed pursuant to the orders of the court. In computing the time, five days, Sundays and holidays shall be excluded and not counted. A duplicate copy of said receipt shall immediately be filed with said county clerk, who shall keep a record of same, provided the sheriff and his deputies shall be required to make the affidavit and issue the receipt and otherwise comply with the provisions of this act. Provided, that all liquors so seized shall be preserved for use as evidence in the trial of any action growing out of such seizure and all officers seizing any such liquors are hereby required to mark the bottles or containers for identification by writing thereon the date of the seizure and the name of the person from whom seized. The sheriff shall be liable on his bond for the safe keeping of all such property so turned over to him under the provisions of this act."

Under these statutes it is the duty of the officer seizing liquor or property, either with or without a search warrant, to arrest the defendant and to take the liquor or property immediately before the court or judge having jurisdiction in the premises. In the case at bar the officer should have taken the liquor seized before "the court having jurisdiction in the premises", and made his return as required by the above statutes. The law in this state does not give the police court of Oklahoma City authority to issue search warrants, nor do they have the right under the statutes to receive liquors which have been seized by police officers and confiscate the same, unless the court having jurisdiction in the premises so orders. This can only be done in the manner prescribed by law, and by the courts which the Legislature of this state have given the power so to do. There is nothing in the record in this case

to show that the city council of Oklahoma City has ever passed an ordinance with reference to the confiscation of intoxicating liquors. If there is any such ordinance its validity will be passed upon by this court when properly presented. But there is nothing in the state statute which gives the police judge the authority to order the confiscation of liquor which has been seized by police officers, either with or without a search warrant. Under section 2640, Okla. Stats. 1931, 37 Okla. St. Ann. § 89, supra, the court having "jurisdiction in the premises" has the power to make an order "directing the officer to hold the property so seized in his possession until discharged by due process of law". Under this statute, we see no reason why the court having jurisdiction, if it so desired, could not, in the event that liquor was seized by police officers, order it held by them until final disposition was made by order of the court. The final disposition would be by the court having "jurisdiction in the premises", and not by the police judge. This would keep the property or liquor in "status quo" until final order of disposition was made by the court.

In the case of Hess v. State, 84 Okla. 73, 202 P. 310, the Oklahoma Supreme Court, in an opinion by Judge Kennamer, who is now Federal Judge of the Northern District of Oklahoma, said [page 315]:

"Section 3617, Revised Laws 1910, supra, 37 Okla. St. Ann. § 89, does not authorize an officer to make a search of premises without a search warrant, but provides, where a violation of the prohibitory laws takes place in the presence of an officer, he may arrest the offender, seize the liquor, bar, furniture, fixtures, etc., and then provides that after such seizure the seizing officer must take the same immediately before the court or judge having jurisdiction in the premises and there make complaint under oath charging the offense so committed. The court should thereupon issue a warrant commanding the officer to hold the property so seized in his possession until discharged by due process of law."

In that case the court held that the search was illegal. There was no arrest of the owner of the premises for a violation of the law as a result of the search. The only question was as to the rights of property seized by the officer under the warrant. This case, however, fully discusses the question involved in the instant case as to the duty of the officer who seizes liquor or property with or without a search warrant. In the case at bar the defendant committed the crime in the presence of the officers and was properly arrested and the liquor seized. We fail to see how the defendant could complain of an irregularity in the return made by the officer, or that no return was made. His arrest was proper when he was found in possession of the whisky, and in no way depended upon the validity of the return made by the officer. As was held by this court in the case of Viadock v. State, 30 Okla. Cr. 374, 236 P. 56:

"However, the statute does not make void such warrants as have been executed by failure of the officers to make return thereon. It is the duty of the officer serving the search warrant to make due return when the same is served, but the failure to do this does not invalidate and make void what was legally done under the authority of the search warrant." Hensley v. State, 53 Okla. Cr. 22, 3 P. 2d 211; Rose v. U. S., 6 Cir., 274 F. 245.

It may be argued that the method provided by the statutes is cumbersome and will deter police officers from searching for liquor. There is no reason for this. The answer is, that the Legislature of this state has so enacted and it is the law of the land. Neither the courts nor the officers can legislate. It is for the courts to interpret the law as it is written. The Legislature of this state has the power and authority to make the municipal court of Oklahoma City a court of record if they so desire. State v. Linn, 49 Okla. 526, 153 P. 826, Ann. Cas. 1918B, 139.

There is no doubt but that it was the intention of the Legislature by the enactment of the above statutes to not

only safe-guard the rights of the citizens of this state in the protection of their property and give them an opportunity to be heard before it was confiscated, but it was also their intention to place a duty and responsibility upon the sworn officers of this state to see that the property which comes into their possession by virtue of the search and seizure laws should be disposed of in the manner provided by law. This principle is clearly illustrated by the facts and the opinion in the case of Hess v. State, supra.

It is further provided by the statutes of this state, as follows: Section 2654, Okla. Stats. 1931, 37 Okla. St. Ann. § 94:

"All sheriffs, constables, marshals and police officers, and all county and city attorneys, shall diligently enforce all the provisions of this chapter. If any such officer shall fail or refuse to do or perform any duty required by the provisions of this chapter, he shall be removed from office as herein provided. For the purpose of such removal a petition may be filed in the district court of the county wherein such officer resides, in the name of the state, on the relation of any citizen thereof upon the recommendation of a grand jury or on the relation of the board of county commissioners, or of any attorney appointed by the Governor under the provisions of this chapter."

The procedure for removal is prescribed therein.

The Supreme Court of this state, in an early decision, construed this statute, together with other statutes of similar import, in an exhaustive opinion by Judge Hardy, State ex rel. Burns v. Linn, 49 Okla. 526, 153 P. 826, Ann. Cas. 1918B, 139. In this case the city council of the city of Tulsa had enacted an ordinance which dealt with the removal from office of city officials. The officers of that city were indicted by a grand jury under the terms of the statutes above quoted. They sought a writ of prohibition, contending that the state did not have jurisdiction under the statutes, and that the provisions of the ordinance for the removal of

officers of the city of Tulsa was exclusive. The Supreme Court held to the contrary, stating [page 829]:

"The general rule, in the absence of special constitutional provision, is that all officers whose duties pertain to the exercise of the police power of the state are in that sense state officers, and under the control of the Legislature, even though they may be officers of a municipality and charged with the enforcement of the local police regulations of such municipality. 28 Cyc. 296. Counsel at the bar in oral argument of this case declined to discuss the question as to whether the enforcement of the prohibition and gambling laws and laws against prostitution were purely municipal, or whether they affected the state at large, taking the position that the sole question for our determination was one of jurisdiction, being whether the general laws of the state enacted for the removal of delinquent police officers are valid and operate within the territorial limits of the city of Tulsa, or whether the provisions of the charter and ordinances are exclusive. We have already shown that it is within the power of the state to enact laws for the police protection of its citizens, which shall be effective throughout the state and all of its subdivisions, and coextensive in their operation with the territorial limits of the state, and that such laws would be effective in the city of Tulsa, and the provisions of the charter and ordinances of said city could not operate as a repeal thereof. It is true that the city might enact ordinances not inconsistent with the state laws, regulating such matters within its territorial limits, and make suitable provisions for the enforcement thereof, and provide for the removal of officers charged with the duty of enforcing such regulations who should fail in the discharge of that duty. This does not mean, however, that the state has completely abdicated all authority in the premises and delegated full and unrestricted control over such matters to the local officials. If the contention of plaintiff be admitted, it destroys the uniformity and efficiency of the police power of the state, leaves these matters subject to the sole management of the local authorities, and would permit a condition to exist in a city with such charter entirely different from and at variance with the conditions in other parts of the state; and if the officers of a city which has adopted a charter are not in sympathy with

the enforcement of such laws, or other laws of like character, were the enforcement of said laws left entirely in their hands, it is easy to see that such laws, or indeed any law, might become a dead letter, and their enforcement a farce, and wholesale violations thereof might occur with the knowledge and consent of the city officials."

Further in this opinion the court says:

"The state has a sovereign interest in local police regulation, and certainly the enforcement of the laws relating to liquor, gambling, and prostitution are matters within the sovereign power of the state, which it has not seen fit, either by the Constitution or the statutes, to completely surrender into the hands of the city officials, and the power to enforce obedience to its statutes is necessarily an inherent attribute in the power to enact them, for if it be once conceded that the state may not by proper measures enforce its regulations, the regulations themselves become futile and ineffective, except so far as the sentiment of any particular community may demand that the same be enforced, or that the officers thereof may see fit so to do, according to their particular personal views upon the matter. We do not apprehend that any dire consequences will follow a pronouncement upon our part that the state still has the right to compel an enforcement of its wholesome police regulations in each and every part of the state, and that officers may not with impunity neglect the duties imposed upon them by law, at their pleasure."

With this law in effect, we do not believe any officer, either of the city or state, will hesitate to do his full duty in the enforcement of the law in the manner provided by the statutes.

For the reasons above stated the judgment of the court of common pleas of Oklahoma county is affirmed.

DOYLE, J., concurs. DAVENPORT, P. J., absent.